# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LUIS R. TAMEZ, | ) |
| Plaintiff, | ) |
| vs. | ) No. 12 C 9411 |
| PATRICK R. DONAHOE, Postmaster General, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Luis Tamez has sued the United States Postal Service pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2(a)(1), 2000e–3(a). He alleges that he was terminated from his position as a mail carrier at the Mount Prospect Post Office in retaliation for filing an internal complaint alleging discrimination on the basis of race and national origin. The Postal Service has moved for summary judgment on all of Tamez's claims. For the reasons stated below, the Court grants the Postal Service's motion.

## Background

Luis Tamez began working as a mail carrier at the Mount Prospect Post Office in May 2001. Before this lawsuit, Tamez filed two internal equal employment opportunity (EEO) complaints against his supervisors. Tamez initiated the first complaint on December 30, 2007 against Michael Naranjo and Jim Carlson, the postmaster and delivery supervisor of the Mount Prospect Post Office. Tamez contested disciplinary action taken against him for violating the Postal Service's vehicle safety policies. The

parties entered into a settlement agreement after mediation. Tamez initiated his second EEO complaint on March 19, 2008, also against Naranjo and Carlson. Tamez claimed reprisal and a hostile work environment, alleging that his supervisors retaliated against him for filing the previous EEO complaint and for taking medical leave when his wife suffered from complications during her pregnancy. See Pl.'s Mem. in Opp. to Mot. for Summ. J., Tamez Aff., Ex. 10 (dkt.no. 44-1). The hostile work environment claim was dismissed, and the reprisal claim resulted in what Tamez refers to as a "merit resolution," although he does not explain what that means.[1]

The current lawsuit stems from Tamez's termination in 2010 based on allegations of sexual harassment. Hazel Lee, a mail carrier employed at the Mount Prospect Post Office, alleged that Tamez exposed his genitalia to her in the doorway of the men's locker room in September 2009. Although management did not become aware of those allegations until February 2010, Lee informed her union steward, Brian Gavin, immediately after the incident allegedly occurred. Gavin arranged a meeting between Tamez and Lee. At that meeting, Tamez denied the allegations but apologized to Lee for anything she might have witnessed while passing the men's locker room. No further action was taken in 2009.

During a sexual harassment training session on February 5, 2010, Lee approached her supervisor, Joey Arcilla, and told him that Tamez had exposed himself

---

[1] It appears that Tamez appealed the EEO ruling, but he has provided no information about the appeal, let alone any information about the terms of the ruling that he appealed. His counsel suggests that the appeal was for the "non-monetary aspect" of the case, Pl.'s Mem. in Opp. to Mot. for Summ. J. at 8, but that is speculative. The Court notes that it is likely that both Tamez and the Postal Service have or could get information about what actually happened in the EEO matter. One can only wonder why neither of them obtained it or provided it to the Court.

2

to her in 2009.  Arcilla informed Naranjo, who immediately placed Tamez on emergency leave without pay at the direction of human resources manager Phyllis Lingenfelser.  Naranjo interviewed Tamez, who denied the allegations.  The following week, Naranjo conducted an investigation during which he obtained statements from two other female employees who alleged sexual harassment by Tamez.  Debbie Flanagan alleged that Tamez discussed oral sex with her in September 2009.  Alicia McCray alleged that Tamez made a sexually offensive statement to her eighteen months prior to the interview.  On February 19, 2010, Tamez was issued a notice of removal for "Conduct Unbecoming a Postal Employee — Violation of the Workplace Harassment Policy."  Tamez pursued relief through the union's grievance process, denying that he engaged in sexually offensive or unwelcome conduct.  An arbitrator found that management had insufficient evidence of harassment to support a finding of just cause to terminate Tamez.  Tamez was reinstated to his job in September 2010.

On March 24, 2010, while the grievance regarding his removal was pending, Tamez filed another EEO complaint against Naranjo, alleging that his February suspension and termination were in retaliation for the EEO complaint that he filed against Naranjo in 2008.  The Postal Service issued an agency decision in August 2012 dismissing Tamez's complaint.  Tamez then filed the present suit.

## Discussion

A party is entitled to summary judgment if it shows that there is no genuine issue of material fact and it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  On a motion for summary judgment, the Court views the record in a light most favorable to the non-moving party and draws all reasonable inferences in that party's favor.

*Trinity Homes LLC v. Ohio Cas. Ins. Co.*, 629 F.3d 653, 656 (7th Cir. 2010).

**A.   Discrimination claims**

As indicated earlier, Tamez included in his complaint claims of discrimination based on race and national origin. He has abandoned these claims because he did not respond to the Postal Service's arguments in favor of summary judgment on the claims. When a plaintiff fails to address a claim in a summary judgment brief, that claim is forfeited. *Palmer v. Marion Cnty.*, 327 F.3d 588, 597–98 (7th Cir. 2003). Further, Tamez has not presented evidence from which a reasonable jury could find that that Naranjo or any other supervisor discriminated against him on the basis of race or national origin. The Court therefore grants summary judgment for the Postal Service on Tamez's discrimination claims.

**B.   Retaliation claims**

Title VII makes it unlawful for an employer to discriminate against an employee "because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a). Retaliation under Title VII can be proved either directly or indirectly. Tamez cannot succeed under either method.

**1.   Direct method**

To prove retaliation via the direct method, Tamez must present evidence that (1) he engaged in protected activity, (2) he suffered a materially adverse employment action, and (3) there was a causal connection between his protected activity and the adverse action. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006); *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006). Tamez engaged

in protected activity by filing EEO complaints against his supervisors. *Tomanovich*, 457 F.3d at 663. He also suffered an adverse employment action when he was terminated from his position. *Id.* at 664. Tamez has not, however, shown that a reasonable jury could find a causal connection between the EEO complaint and his termination.

To show a causal connection under the direct method of proof, Tamez must offer evidence that amounts to an admission or circumstantial evidence that gives rise to an inference of intentional retaliation. *Stephens v. Erickson*, 569 F.3d 779, 787 (7th Cir. 2009). Because he cites no admission, Tamez must offer circumstantial evidence of retaliatory animus by presenting a "convincing mosaic of circumstantial evidence that would permit the same inference without the employer's admission." *Coleman v. Donahoe*, 667 F.3d 835, 860 (7th Cir. 2012) (internal quotation marks omitted). This can be done by offering evidence of "suspicious timing, ambiguous statements, . . . and other bits and pieces from which an inference of retaliatory intent might be drawn"; "evidence that similarly situated employees were treated differently"; or "evidence that the employer offered a pretextual reason for an adverse employment action." *Id.* (internal quotation marks omitted).

Timing alone is rarely sufficient to create a triable issue of material fact, and as the time period separating the protected activity and adverse employment action increases, "the causal inference weakens and eventually time becomes the plaintiff's enemy." *Lalvani v. Cook Cnty.*, 269 F.3d 785, 790 (7th Cir. 2001). Nine months elapsed between the last event related to Tamez's 2008 EEO complaint and his termination in February 2010. That degree of temporal proximity is insufficient by itself to allow an inference of retaliation. *See Tomanovich*, 457 F.3d at 665 (four-month gap

insufficient to establish a causal connection without additional evidence).

Tamez does not present any other evidence from which a reasonable jury could infer a causal connection between his EEO complaint and his termination. Tamez relies on the arbitrator's decision that the sexual harassment allegations were not sufficiently credible to merit his termination to support his argument that the Postal Service's stated reason for the termination was false. Pl.'s Mem. in Opp. to Mot. for Summ. J. at 1–3, 13; *see* Def.'s Mem. in Supp. of Mot. for Summ. J., Ex. 6, at 17. The arbitrator's decision, however, is not binding in this case. *See Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 54–60 (1974). And even if the arbitrator's decision is admissible—a question the Court need not address—at most it shows that the evidence supporting termination was insufficient, not that the reason for termination was made up, which is what Tamez has to show to prove pretext. *See Hill v. Tangherlini*, 724 F.3d 965, 968 (7th Cir. 2013) ("An inquiry into pretext requires that we evaluate the honesty of the employer's explanation, rather than its validity or reasonableness."); *Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 696 (7th Cir. 2006) ("An employer's mistaken belief that the plaintiff's conduct merited termination is not unlawful, so long as the belief was honestly held.").

Tamez has not otherwise offered evidence from which a reasonable jury could find that management's stated reason for Tamez's termination was made up. Tamez concedes that the first sexual harassment allegation was initiated by Hazel Lee and thus that it was not concocted by Naranjo or any other supervisor. Pl.'s Mem. in Opp. to Mot. for Summ. J. at 9–10. It is also undisputed that after Lee's initial accusation, a human resources manager specifically directed Naranjo to place Tamez on emergency

6

leave pending an investigation. Because Naranjo acted based on an independent allegation and followed the manager's direction, no reasonable jury could find that he commenced the investigation with a retaliatory motive.

Tamez alleges that Flanagan and McCray's accusations were solicited by Naranjo and that Naranjo specifically asked female employees whether they had been sexually harassed by Tamez during his interviews. *Id.* at 11. Even if that is so, Tamez offers no evidence from which a reasonable jury could find that the statements were manufactured by Naranjo or were motivated by a retaliatory animus.

Tamez also points to a poster that was displayed in the Mount Prospect Post Office portraying his face next to a warning to employees about defrauding the Postal Service's workers' compensation program. Pl.'s Mem. in Opp. to Mot. for Summ. J., Tamez Aff., Ex. 20 (dkt. no. 49). Tamez argues that Naranjo allowed the poster to be displayed in retaliation for his previous complaint. Tamez offers no evidence, however, that indicates when the poster was displayed or that Naranjo was even aware of it. Without such evidence, the poster provides no support for Tamez's claim of retaliation.

Terry Rohan, president of the Mount Prospect Post Office mail carrier's union, has provided an affidavit in which he states that he "personally witnessed the uncharacteristic behavior of a Postmaster by Naranjo in taking the lead of investigating and issuing discipline to Tamez in lieu of his immediate supervisor" and opines that "Tamez had been treated disparately." Pl.'s Mem. in Opp. to Mot. for Summ. J., Rohan Aff. ¶ 23 (dkt. no. 37). Rohan's speculation about the reasons for the investigation is not based on personal knowledge and is therefore inadmissible. *Luster v. Illinois Dep't of Corr.*, 652 F.3d 726, 731 (7th Cir. 2011).

Tamez also cites evidence regarding other employees who he alleges did not engage in protected activity and were treated differently. In determining whether employees are similarly situated, the Court must make a "common sense factual inquiry" to determine whether there are "enough common features between the individuals to allow a meaningful comparison." *Humphries v. CBOCS W., Inc.*, 474 F.3d 387, 405 (7th Cir. 2007) (internal quotation marks omitted), *aff'd*, 553 U.S. 442 (2008). Typically this requires, at a minimum, evidence that the other employees were subject to like standards of conduct and engaged in similar misconduct. *See Coleman*, 667 F.3d at 847. None of the employees Tamez cites is sufficiently similar to support an inference that Naranjo retaliated against him.

The only Postal Service employee Tamez cites who was accused of sexual harassment is Edward Candelario, a former supervisor at the Mount Prospect Post Office. Candelario and Tamez were both supervised by Naranjo.[2] But although both Tamez and Candelario were accused of sexual harassment, "the critical question is whether [the plaintiff and the proposed comparator] have engaged in conduct of comparable seriousness." *Coleman*, 667 F.3d at 851. Tamez has presented no evidence concerning Candelario's alleged conduct. Without that sort of information, the fact that Candelario was not terminated does not support an inference of differential treatment.

---

[2] There is some contradiction in Tamez's statements as to whether Naranjo was Candelario's supervisor at the time of the sexual harassment allegations. In his brief, Tamez claims that the sexual harassment charges against Candelario were brought before Naranjo came to Mount Prospect. Pl.'s Mem. in Opp. to Mot. for Summ. J. at 4. During his deposition, Tamez stated that Naranjo was Candelario's supervisor at that time. Def.'s Brief in Supp. of Mot. for Summ. J., Ex. 1 (Pl.'s Dep.), at 45 (dkt. no. 28-2). Viewing the record in the light most favorable to Tamez, the Court assumes that Tamez and Candelario shared a disciplining supervisor.

Additionally, Tamez's statements concerning the disciplinary action taken against Candelario are not based on his personal knowledge. Tamez concedes that his statements about Candelario are based on "speculation." Pl.'s Resp. to Def.'s. Local Rule 56.1(A)(3) Stmt. of Facts ¶ 24 n.1. Inadmissible evidence like this is insufficient to show the existence of a genuine factual dispute. *See Luster*, 652 F.3d at 731 (rejecting proposed comparator evidence when the plaintiff did not "supply an admissible foundation from which to conclude that he even possessed personal knowledge about the nature of the accusation").

Tamez has also failed to offer evidence that Ed McSweeney and India Stines Banks's violations were comparable to Tamez's alleged misconduct. An employee is not similarly situated when his misconduct is not similar to the plaintiff's. *See Nichols v. S. Illinois Univ.-Edwardsville*, 510 F.3d 772, 786 (7th Cir. 2007). Reports offered by Tamez indicate that McSweeney had a verbal altercation with a female mail carrier. Pl.'s Mem. in Opp. to Mot. for Summ. J., Cannon Aff., Ex. A (dkt. no. 38-1). That, however, does not approach the seriousness of the allegation against Tamez. *See Cung Hnin v. TOA (USA), LLC*, 751 F.3d 499, 505 (7th Cir. 2014) (discrimination case; rejecting comparator evidence when the plaintiff's termination was for sexual harassment and the proposed comparator's conduct was for angry outbursts).

As for Banks, she was accused of violating vehicle safety policies and personally using a Postal Service-issued credit card. Without more, this is insufficient to enable a determination that her violations were of comparable seriousness to the sexual harassment allegations against Tamez. Additionally, Banks is not similarly situated because she was not treated better than Tamez. Like Tamez, Banks was terminated

9

after filing an EEO complaint. *See* Pl.'s Mem. in Opp. to Mot. for Summ. J. at 11. To the extent that Tamez points to Banks's termination to show a pattern of retaliation against Mount Prospect Post Office employees who filed EEO complaints, he has not provided enough information about her case to make the evidence relevant and admissible under Federal Rules of Evidence 404(b) and 403.

Considering the evidence offered by Tamez as a whole, no reasonable jury could find that his termination and EEO complaint were causally connected. The arbitrator's finding of insufficient evidence to terminate does not support the inference that Naranjo's stated reasons were pretextual. The workers' compensation poster portraying Tamez and Rohan's statements about Naranjo's motivations—to the extent that they are admissible—do not support an inference that the stated reason for Tamez's termination was false. Further, Tamez does not offer admissible evidence of any similarly situated employees who were treated differently. In sum, Tamez's evidence does not point to any retaliatory motive or suggest that he was treated differently from other employees. Tamez therefore cannot survive a motion for summary judgment under the direct method.

### 2. Indirect method

To establish a prima facie case of retaliation using the indirect method of proof, Tamez must show that (1) he engaged in a protected activity, (2) he met his employer's legitimate expectations, (3) he suffered a materially adverse employment action, and (4) he was treated less favorably than similarly situated employees who did not engage in the protected activity. *Tomanovich*, 457 F.3d at 663. (For summary judgment purposes, of course, Tamez need only show that a reasonable jury could find in his

10

favor on these points.) If Tamez establishes a prima facie case, the burden of production shifts to the Postal Service to articulate a non-discriminatory reason for the action. *Id.* If the Postal Service does so, then the burden shifts back to Tamez to show that the stated reason is pretextual. *Id.*

Tamez has not made out a prima facie case of retaliation under the indirect method. Among other things, Tamez must present evidence of employees who did not engage in a protected activity and are otherwise comparable enough to permit a reasonable inference of discrimination and who were dealt with less severely than he was. *See Coleman*, 667 F.3d at 852. For the same reasons that Candelario, McSweeney, and Banks are not similarly situated under the direct method, they are not similarly situated under the indirect method. *See id.* at 860 n.8 (noting that the analyses of similarly situated employees under the direct and indirect methods overlap).

And even if Tamez were able to make out a prima facie case, no reasonable jury could find that the Postal Service's stated reason was pretextual. As the Court has already discussed, Tamez has not offered evidence from which a reasonable jury could find that the Postal Service's stated reasons for his termination were pretextual. Just as the arbitrator's decision, the poster portraying Tamez, and Rohan's statement concerning Naranjo's behavior are insufficient to permit a reasonable inference of pretext under the direct method, they also do not permit an inference of pretext under the indirect method. *See id.* (noting that the pretext analyses under the direct and indirect methods overlap).

For the reasons stated above, Tamez cannot survive a motion for summary judgment under the indirect method.

### C. Counsel's use of inappropriate language

The Court finds itself constrained to address the use by Tamez's counsel Ryan Nalley of inappropriate language in his brief in response to the motion for summary judgment. At page 10 of the brief, in discussing Naranjo's investigation of Tamez's conduct, Mr. Nalley stated the following:

> The fact that the Postmaster went around to females informed [sic] them he investigating [sic] Tamez for sexual harassment, and asked them if they had ever been sexually harassed makes either the investigation an exercising [sic] in terminating the Plaintiff *or the Postmaster is a mongoloid*.

Pl.'s Mem. in Opp. to Def.'s Mot. for Summ. J. at 10 (emphasis added). The term "mongoloid," as Mr. Nalley used it, is a derogatory and offensive term used (inappropriately) to refer to persons affected with Down syndrome. *See, e.g.*, http://www.merriam-webster.com/dictionary/mongoloid (last visited Sept. 10, 2014); http://en.wikipedia.org/wiki/Down_syndrome (last visited Sept. 10, 2014). The Court was, to say the least, shocked by Mr. Nalley's use of this term. The Court hereby puts him on notice that his use of this or other derogatory terms before this or other courts in the future may subject him to disciplinary action.

### Conclusion

For the foregoing reasons, the Court grants defendant's motion for summary judgment [dkt. no. 26] and directs the Clerk to enter judgment in favor of defendant.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: September 10, 2014